UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| PREMIER BANK, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00340 (CMH/IDD) |
| | ) | |
| TECHNOLOGY RESOURCES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

FILED
NOV 2 6 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## REPORT AND RECOMMENDATION

This matter is before the Court on Premier Bank, Inc.'s ("Plaintiff's") Motion for Default Judgment against Technology Resources, Inc. ("TRI"), Roger D. Rutti ("R. Rutti"), and Azita L. Rutti ("A. Rutti") (collectively referred to as "Defendants"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Dkt. No. 8.) After a licensed attorney for Defendants failed to appear at the hearing on June 14, 2013, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, the supporting affidavits and documentation thereto, and relevant portions of the underlying record, the undersigned Magistrate Judge recommends that Plaintiff's Motion be granted in part and denied in part.

## I.    INTRODUCTION

On March 13, 2013, Plaintiff filed a Complaint against Defendants seeking recovery based on Defendants' failure to repay a promissory note. (Dkt. No. 1.) Plaintiff has moved for default judgment against Defendants and seeks to recover monies owed including the full principal amount of the loan, accrued and unpaid interest, late charges, and attorneys' fees and costs. (Compl. ¶¶ 18-19; Mot. Def. J. at 3-4; Arsonson Aff. at 2.) After Defendants failed to

respond or appear at any proceedings, the undersigned Magistrate Judge took the matter under advisement to issue this Report and Recommendation.

## A. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000. Plaintiff is a West Virginia corporation with its principal place of business in West Virginia. (Compl. ¶ 1.) Defendant TRI is a Virginia corporation with its principal place of business in Purcellville, Virginia, which is located within the Eastern District of Virginia. (*Id.* ¶ 2.) Defendants R. and A. Rutti are persons domiciled in Virginia. (*Id.* ¶ 3.) Further, the amount in controversy is $904,937.12. (Dkt. No. 1-5.) Thus, because the parties are completely diverse, and the amount in controversy exceeds $75,000, the Court has valid subject matter jurisdiction over this matter.

This Court may exercise personal jurisdiction over Defendants pursuant to Va. Code § 8.01-328.1(A). Virginia's long-arm statute is a "single act statute" meaning that, in Virginia, only one business transaction is required to confer jurisdiction on its courts. *See I.T. Sales, Inc. v. Dry*, 278 S.E.2d 789, 790 (Va. 1981); *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (Va. 1971). Defendant TRI, a Virginia corporation with its principal place of business within the Eastern District of Virginia, executed a promissory note ("Note") in favor of Plaintiff's predecessor bank for business purposes. (Compl. ¶ 2, 5.) Defendants R. and A. Rutti also transacted business on behalf of Defendant TRI, within the Eastern District of Virginia. (Mem. Supp. Mot. Def. J. at 1; *see* Compl. ¶¶ 2-3, 5-11.)

Further, this Court may exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A). Rule 4(k)(1)(A) provides that service of a summons

2

or waiver of service is sufficient to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Further, Virginia courts have personal jurisdiction when the defendant is served with process in Virginia. *Blackson v. Blackson*, 579 S.E.2d 704, 711 (Va. App. 2003); *Ragouzis v. Ragouzis*, 391 S.E.2d 607, 608 (Va. App. 1990). On April 12, 2013, Defendant R. Rutti was served by a registered private process server at his home in Upperville, Virginia; he accepted service on behalf of himself, his wife, A. Rutti, and as an individual authorized to accept service on behalf of Defendant TRI. (*See* Mem. Supp. Mot. Def. J. at 3; Dkt. Nos. 3-5.)

Similarly, venue is appropriate before this Court pursuant to 28 U.S.C. § 1391 because Defendants R. and A. Rutti, on behalf of Defendant TRI, transacted business within the Eastern District of Virginia. (Compl. ¶ 3.) Defendants R. and A. Rutti live in the Commonwealth of Virginia, and Defendant TRI's principal place of business is located in Purceville, Virginia within the Eastern District of Virginia. (Compl. ¶¶ 2-3.) The undersigned finds that this judicial district is the appropriate venue under 28 U.S.C. § 1391 because business transactions associated with all three Defendants occurred within this district and Defendant TRI's principal place of business is within this judicial district. Accordingly, subject matter jurisdiction, personal jurisdiction, and venue are satisfied in this action.

## B.   Service of Process

Under 29 U.S.C. § 1132(e)(2), service of process is proper in any district where a defendant resides or may be found. When a plaintiff fails to serve the defendant properly under federal or state law, a court lacks personal jurisdiction over the defendant and may not enter default judgment against him. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, Fed. R. Civ. P. 4(k), (stating that "[s]ervice of summons

3

is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served" (quoting *Miss. Publ'g Corp. v. Murphee*, 326 U.S. 438, 444-45 (1946))); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249 (4th Cir. 1974) (reversing the district court's entry of default judgment against a non-resident defendant union because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the union with summons and complaint).

Although § 1132(e) states where a defendant may be served, the Federal Rules of Civil Procedure provide the manner in which service must occur. Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h). Additionally, under Rule 4(e)(2), individuals are properly served by delivering to the person a copy of the summons and the complaint or by leaving a copy of the summons and complaint at the individual's usual abode with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2).

On April 12, 2013, a private process server served Defendant R. Rutti with a true and correct copy of the Summons, Complaint, exhibits and documents related thereto. (Dkt. No. 3.) Defendant R. Rutti accepted service on behalf of Defendant TRI, as its registered agent designated to accept service, and on behalf of Defendant A. Rutti, his wife. (Dkt. Nos. 3-5.) Therefore, Plaintiff properly served Defendants pursuant to Rules 4(h) and 4(e)(2).

4

## C.   Grounds for Entry of Default

On March 13, 2013, Plaintiff filed a Complaint against Defendants for defaulting on a negotiable instrument. (Dkt. No. 1.)  A private process server served Defendants on April 12, 2013. (Dkt. Nos. 3-5.)  On May 21, 2013, after Defendants failed to respond, Plaintiff requested entry of default judgment as to Defendants (Dkt. No. 6), and the Clerk entered default against Defendants on May 23, 2013 (Dkt. No. 7).  On May 31, 2013, Plaintiff filed this Motion for Default Judgment. (Dkt. No. 8.)  Along with Plaintiff's Motion for Default Judgment, Plaintiff attached a "Notice to Defendants" stating that Defendants had twenty days to respond to Plaintiff's Motion for Default Judgment. (Dkt. No. 8 at 5.)  This Court held a hearing on the matter on June 14, 2013. (Dkt. No. 9.)  After Defendants failed to appear at the June 14, 2013 hearing and twenty days passed with no response from Defendants, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## D.   Findings of Fact

The undersigned Magistrate Judge makes the following findings of fact based on the Complaint, the Motion for Default Judgment, and the memorandum and affidavit in support thereof.

On March 23, 2003, Plaintiff's predecessor,[1] the Adams National Bank, made a revolving commercial loan to Defendant TRI[2] in the amount of two hundred fifty thousand dollars ($250,000).[3]  (Compl. ¶¶ 1, 5; Dkt. No. 1-1.)  Although the loan originated at $250,000, the amount of the loan was subsequently increased at various times throughout the period of the

---

[1] Plaintiff is the Adams National Bank's successor by merger, effective on April 8, 2011. (Compl. ¶ 1; Dkt. No. 1-4 at 1.)

[2] Defendants R. Rutti and A Rutti signed all loan documents mentioned in the Complaint on behalf of Defendant TRI. (*See generally* Dkt. No. 1-1 (Dkt. No. 1-1 is also referred to in Plaintiff's Complaint as "Pl. Ex. A.")).

[3] This loan is evidenced by the Note listed as part of Dkt. No. 1. All subsequent changes to the original loan sum are extensions of the original Note.

loan. On December 2, 2003, the amount of the loan was subsequently increased to six hundred fifty thousand dollars ($650,000) pursuant to the terms and conditions of a Change in Terms Agreement; the Change in Terms Agreement was executed by Defendant TRI and delivered to Plaintiff's predecessor. (*Id.* ¶ 6; Dkt. No. 1-1 at 4.) Defendants R. and A. Rutti each executed Commercial Guaranties on October 1, 2005. (*Id.* ¶ 12-14; Dkt. Nos. 1-2, 1-3.) Plaintiff, as successor by merger to the Defendants' original lender bank, is the holder of the Note and the beneficiary of the guaranties. (*Id.* ¶ 14.)

On October 4, 2007, the amount of the loan was increased to nine hundred fifty thousand dollars ($950,000) pursuant to the terms and conditions of a Change in Terms Agreement; the Change in Terms Agreement was executed by Defendant TRI and delivered to Plaintiff's predecessor. (*Id.* ¶ 7; Dkt. No. 1-1 at 7.) Again, on September 22, 2008, the amount of the loan was increased to one million fifty thousand dollars ($1,050,000) pursuant to the terms and conditions of a Change in Terms Agreement; the Change in Terms Agreement was executed by Defendant TRI and delivered to Plaintiff's predecessor. (*Id.* ¶ 9; Dkt. No. 1-1 at 13.)

On August 31, 2011, the parties executed a Forbearance Agreement.[4] (Compl. ¶ 15.) Defendants defaulted under the terms of the Forbearance Agreement by failing to repay all indebtedness owed to Plaintiff including the principal amount, accrued and unpaid interest, and late charges owed thereunder by February 27, 2012. (*See id.* ¶ 17; Dkt. No. 1-4.) Additionally, under the terms of the Note, Defendants waived demand notice of dishonor and all other notice. (Compl. ¶ 19.) Plaintiff calculates that Defendants owe: $718,680.03 in principal;[5] $94,916.89

---

[4] The Forbearance Agreement is attached to the Complaint as Plaintiff's Exhibit D.

[5] The Forbearance Agreement calculates that as of August 24, 2011, the unpaid principal balance owed under the loan was $724,680.03. (*See* Dkt. No. 1-4.) However, Plaintiff's Complaint asks for principal balance relief in the amount of $718,680.03. (Compl. ¶ 19.) Plaintiff's Complaint asks for $6,000 less than the Forbearance Agreement's calculation. This Report and Recommendation will proceed as to the principal amount alleged in the

6

in accrued and unpaid interest; and $91,266.37 in accrued and upaid late fees; the total

outstanding balance due is $904,863.29. (*Id.* ¶ 19.)

## II.   EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default

judgment when "a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend." *See Music City Music*, et al., *v. Alfa Foods, Ltd.*, 616 F. Supp. 1001,

1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate

cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155

F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to

the plaintiff where the plaintiff failed to state a claim). A defendant in default concedes the

factual allegations of the complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d

778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334,

341 (4th Cir. 2006) (default has the effect of admitting factual allegations in the complaint).

Default does not, however, constitute an admission of the adversary's conclusions of law, and is

not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's

right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l

Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the

well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action."

*Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge

must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of

Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be

---

Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that a defendant in
default concedes only the factual allegations of the Complaint).

granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 664).

### A.    Count I: Breach of Negotiable Instrument

Plaintiff seeks to recover the total balance due on a promissory note and its guarantees based on Defendants alleged failure to repay monies owed including the full principal amount, accrued and unpaid interest, and late charges. (Compl. ¶¶ 18-19; Mot. Def. J. at 3-4.)

Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim. *See CIT Small Bus. Lending Corp. v. Core Holdings, LLC*, 2:12CV505, 2013 WL 711395, at *1 (E.D. Va. Feb. 7, 2013). To succeed on a breach of contract claim, a plaintiff must successfully plead the elements of breach of contract. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Additionally, Virginia statutory law lists requirements for enforcement of a promissory note. Va. Code §§ 8.01-27, 8.3(A)-308, 8.3A-104.

First, to sufficiently allege a breach of contract claim, a plaintiff must allege that the defendant (1) had a legally enforceable obligation, (2) materially breached that obligation, and (3) such breach caused the plaintiff damage. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). A plaintiff must prove these damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable. *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009); *see also Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006).

Under Virginia Code § 8.3A-104, a promissory note constitutes a "negotiable instrument." A "negotiable instrument" is defined as: an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise, if it: (1) is payable to a bearer/to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. Va. Code § 8.3A-104 (2013). To bring a civil action for enforcement of a note, pursuant to § 8.01-27, a promissory note must be signed by the charged party or his agent and an action may also be maintained on any note or writing for any past due installment on a debt payable in installments. Va. Code § 8.01-27 (2013); *see Core Holdings*, 2013 WL 711395, at *3 (citing § 8.01-27 and recommending default judgment where the defendant corporation and its guarantors failed to make payments when due and ceased to operate the business financed under the terms of the promissory note); *CIT Small Bus. Lending Corp. v. Powerhouse, Alexandria,* et al., 1:10CV133, 2010 WL 5187805, at *1 (E.D. Va. Dec. 13, 2010) (citing § 8.01-27 and granting default judgment where the defendant corporation and its guarantors failed to make payments on a promissory note). Under § 8.3(A)-308, signatures on negotiable instruments are presumed valid, unless denied in the pleadings. *See Core Holdings*, 2013 WL 711395, at *1.

Plaintiff has alleged sufficient facts to provide for a judgment against Defendants based on Defendant TRI's failure to fulfill its obligations under the Note as well as the Forbearance agreement, and based on the Defendants A. and R. Rutti's obligations under their guaranties. Defendant TRI entered into a contract on March 23, 2003 with Plaintiff's predecessor, the Adams National Bank, whereby Defendant TRI executed a Note in the amount of two hundred fifty thousand dollars ($250,000) in favor of Plaintiff's predecessor, which Plaintiff acquired by

9

merger. (Compl. ¶¶ 1, 5; Dkt. No. 1-1.)   Defendants R. and A. Rutti each executed Commercial Guaranties of the Note on October 1, 2005.   (*Id.* ¶ 12-14; Dkt. Nos. 1-2, 1-3.)   Plaintiff, as successor by merger to Defendant TRI's original lender bank, is the holder of the Note and the beneficiary of the guaranties.   (*Id.* ¶ 14.)   The loan amount was increased several times and eventually totaled one million fifty thousand dollars ($1,050,000).   (*Id.* ¶ 9; Dkt. No. 1-1.)   Thus, pursuant to Virginia Code §§ 8.3(A)-104 and 8.01-27, the original Note[6] executed by the parties constituted a negotiable instrument because the Note was payable to Defendant TRI and signed by Defendants A. and R. Rutti at the time of issuance, and the Note does not state any other instruction by Plaintiff's predecessor aside from repaying the loaned monies.

Defendants also materially breached their obligation to Plaintiff by defaulting on payments due under the terms of the Note, Change in Terms Agreements, Forbearance Agreements, and Guaranties.   By the terms of the most recent document, the Forbearance Agreement, Defendants were required to pay the entire amount of indebtedness by February 27, 2012. (Dkt. No. 1-4 at 5.) Defendants breached their obligation to Plaintiff by failing to pay all indebtedness by February 27, 2012, and such failure caused Plaintiff a substantial loss.   Pursuant to the terms of all documents executed by Defendants, and because Defendants waived demand notice of dishonor and all other notice (Compl. ¶ 19; *see* Dkt. No. 1, Pl. Exs. A-D), Defendants are liable to Plaintiff for all amounts due.   Thus, under Virginia common and statutory law, the undersigned finds that Plaintiff has sufficiently pleaded that Defendants have defaulted in their obligations under the Note and guarantees.

---

[6] The Note referred to here is the original promissory note including each subsequent contractual agreement modifying the Note.

### III.   REQUESTED RELIEF

#### A. Damages

The case law in this district provides that, in default cases, "there can be no recovery over the amount pled in the complaint, and that the complaint must pray for a specific monetary amount." *Sheet Metal Workers' Nat'l Pension Fund v. Frank Torrone & Sons, Inc.*, No. 1:04-cv-1109, 2005 WL 1432786, at *8 (E.D. Va. June 1, 2005); *see also Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *9 (E.D. Va. Dec. 17, 2009).   Plaintiff's Complaint requests judgment in the amount of $904,863.29 which includes: principal in the amount of $718,680.03, accrued and unpaid interest in the amount of $94,916.89, and accrued and unpaid late fees amounting to $91,266.37; plus per diem interest from March 12, 2013 in the amount of $73.83.   Because Plaintiff has sufficiently pleaded relief for Defendants' breach of negotiable instrument and its guarantees, upon review of Plaintiff's Complaint, Motion for Default Judgment, and exhibits, this Court finds that Plaintiff has provided a sufficient basis to award damages in the amount of $904,937.12.

#### B. Legal Fees

Plaintiff requests attorneys' fees and costs in the amount of $4,039.30, which includes actual and estimated costs of legal fees through judgment.   Specifically, Plaintiff requests $2,204.00 in attorneys' fees, $695.30 in expenses, and $1,140 in estimated attorneys' fees through the judgment date. (Dkt. Nos. 3-5, 8-1.)

A plaintiff is entitled to reasonable attorneys' fees and costs necessary to collect amounts due under a promissory note. *See CIT Small Bus. Lending Corp. v. Powerhouse Alexandria, Inc.*, No. 1:10-cv-00133, 2010 WL 5187805, at *1 (E.D. Va. Dec. 13, 2010).   The Supreme Court has stated that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 103 (1992) (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).   The Fourth Circuit has determined that an action is successful any time a plaintiff establishes liability. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995).

To determine the reasonableness of the hourly rate and time expended, district courts look to twelve guiding factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009).   Upon such a review, "[t]he district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to each factor." *Arnold v. Burger King Corp.*, 719 F.2d 63, 67 n. 4 (4th Cir. 1983).   Likewise, this Court "need not address all twelve factors independently because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Signature Flight Support Corp. v. Landow Aviation L.P.*, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010) (citations omitted).

Moreover, to demonstrate that an hourly rate is reasonable, the party requesting fees must produce "specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." *See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).   Acceptable evidence includes "affidavits of other local lawyers who are familiar

12

both with the skills of the fee applicants and more generally with their work in the relevant community." *See Robinson*, 560 F.3d at 245. However, an attorney's own affidavit attesting to the reasonableness of fees charged is insufficient. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

Plaintiff submitted an affidavit in support of attorneys' fees detailing the attorneys' fees incurred in this action. (Dkt. No. 8-1, Aff. in Supp. of Attorney's Fees ("Aronson Aff.").) Plaintiff's Counsel avers that he prepared billing entries in connection with this case along with the costs incurred and billed to the client and that such billing rates are reasonable in comparison with other similar firms in the area; the total amount of attorneys' fees calculated is $4,039.30. (Dkt. No. 8-1 ¶¶ 3, 7, Aronson Aff. ¶¶ 3, 7.) Plaintiff's $4,039.30 calculation includes $2,204.00 in attorneys' fees, $695.30 in expenses, and $1,140 in estimated attorneys' fees in anticipation of fees through judgment. (Dkt. No. 8-1.) The hourly rates charged by Plaintiff's Counsel in 2012 and 2013 are $380 for non-lender clients such as Plaintiff. (Dkt. No. 8-1 ¶ 4, Aronson Aff. ¶ 4.) Particularly, "[c]ourts in this division have previously recognized rates of up to $400 for partners and $250 to $300 for associates." *In re: Outsidewall Tire Litig.*, 748 F. Supp. 2d 557, 568 (E.D. Va. 2010). Thus, although Plaintiff does not supplement its Affidavit in Support of Attorneys' Fees with additional affidavits of hourly rates charged by attorneys in the area, based on this Court's knowledge and experience, as well as on a number of recent holdings in this division recognizing rates above that of Plaintiff's Counsel, the undersigned finds that the billing rates of Plaintiff's attorney are reasonable. Similarly, in assessing costs in the amount of $695.30, this Court finds that such expenses were reasonably incurred in Plaintiff's attempt to collect amounts due in this action. *See CIT Small Bus. Lending Corp. v. Powerhouse Alexandria, Inc.*, 2010 WL 5187805, at *1 (E.D. Va. Dec. 13, 2010).

However, regarding Plaintiff's estimated attorneys' fees in the amount of $1,140 through the judgment date, this Court finds that such costs are speculative. Therefore, Plaintiff is not entitled to an award for said estimated fees. *See Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (stating that a plaintiff must prove damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable). Thus, the undersigned has examined the record and finds that these amounts are reasonable compensation for work necessarily expended to enforce Plaintiff's rights and recommends Plaintiff be awarded attorneys' fees in the amount of $2,204.00 in legal fees incurred through May 30, 2013, and $695.30 in costs for a total of $2,899.30.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be granted in part and denied in part. The Motion should be granted as to entry of default judgment against Defendants Technology Resources, Inc., Roger D. Rutti, and Azita L. Rutti in favor of Plaintiff on count one for breach of negotiable instrument. Accordingly, the undersigned Magistrate Judge recommends that an order be entered awarding Plaintiff damages against Defendants jointly and severally in the amount of $907,836.42 including principal amounting to $718,680.03, interest in the amount of $94,916.89, $91,266.37 in late fees; interest in the amount of $73.83, and attorneys' fees and costs amounting to $2,899.30. The undersigned recommends the Motion be denied as to Plaintiff's request for $1,140 in estimated attorneys' fees not yet billed.

## V.   NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified as follows. Objections to this Report and Recommendation must, pursuant to 28 U.S.C. § 636**

and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and to Defendants.

/s/
Ivan D. Davis
United States Magistrate Judge

November 26, 2013
Alexandria, Virginia